## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RAINEE ALANIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **Case No. 2:21-cv-00236** |
| | § | |
| GULF COAST FEDERAL | § | |
| CREDIT UNION, | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

To the Honorable United States District Court:

Plaintiff Rainee Alaniz files this Original Complaint against Defendant Gulf Coast Federal Credit Union, and shows as follows:

### PARTIES

1.     The plaintiff is Rainee Alaniz.   She is an individual and resident of Nueces County, Texas.

2.     The defendant is Gulf Coast Federal Credit Union ("the defendant").   It is a business entity, lawfully formed, existing and located in Nueces County, Texas.   The defendant can be served with process by personal service on its CEO, Mr. Jeremy Garza, 2633 Rodd Field Road, Corpus Christi, Texas 78414.

## JURISDICTION

3.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  It presents a federal question.  This Court has pendant or supplemental jurisdiction of the state law claims alleged herein.  28 U.S.C. § 1367.

## VENUE

4.     Pursuant to 29 U.S.C. § 1132(e)(2), venue for this suit is proper in this district and division because it is the district and division where the alleged events occurred.

## FACTS

5.     The defendant is a credit union which provides financial services and insurance, at two locations in Corpus Christi, one location in Portland and one in Alice, Texas.   The defendant also operates a separate, call center in Corpus. Christi, which is not open to the public.   The plaintiff was employed by the defendant in Corpus Christi from October 2013 to on or about August 3, 2021.

6.     The defendant employs more than 50 employees within a 75-mile radius of the location where the plaintiff was employed by the defendant; the plaintiff was an employee of the defendant for the 12-month period prior to her discharge and worked more than 1,250 hours of service during that period.

7.     Prior to her discharge, the plaintiff had no disciplinary history and received only positive evaluations of her job performance.   At the time of her discharge, the plaintiff

was branch manager for the defendant's location location on Rodd Field Road in Corpus Christi.

8.      The defendant's Rodd Field Road location was robbed by one or more persons on or about June 19, 2021.  During the commission of the crime, the plaintiff was forced to interact directly with the criminal.  She was genuinely a victim of the crime.  As a result of the crime, the plaintiff was emotionally and psychologically traumatized.  Therefore, after the robbery, she immediately reached out to the defendant's human resources for assistance; however, she was initially dissuaded from filing a workers' compensation claim by a human resources representative.  But a day or two after, or on or about June 22, 2021, the plaintiff was able to initiate a workers' compensation claim.  The defendant's description of the nature of the plaintiff's injury to its workers' compensation carrier in its "Employers First Report of Injury or Illness," the defendant identified it as "mental disorder" and "mental stress."

9.      The plaintiff then began receiving treatment from a licensed professional counselor via the defendant's workers' compensation insurance carrier.  Her first appointment with her health care provider was on or about July 13, 2021.  The treatment has continued to the present day.

10.     Because of the incident, her condition and healthcare treatment, the plaintiff was not able to work a full schedule each week.  After June 19, 2021, the date of the robbery,

the plaintiff worked on July 7, July 12, July 13, July 19, and July 20, respectively.   She

worked a full day on these days, but did not work on the other days between June 21,

2021 and July 23, 2021.   She did not work these days because she was unable.   Indeed,

her counselor has the professional opinion that she should not have been working during

this period at all because of her condition.

11.     Further, in mid-July 2021, the plaintiff and her children began exhibiting

symptoms consistent with COVID-19.   The plaintiff communicated to the defendant her

concern about her symptoms.   The communication was by telephone and text message.

The plaintiff even sent copies of medical records to the defendant showing her visit to an

ER on or about July 15, 2021.   The text message response from the defendant on or about

July 17, 2021, stated "[t]hanks for the update; hope you get to feeling better soon."

12.     On July 22, 2021, the plaintiff communicated to the defendant that she was "not

doing ok.   I'm going to need more time off."   This was related to her condition caused by

the robbery and, secondarily, to her physical symptoms caused by her COVID-19-like

symptoms.   The defendant did not object to the requested absence.   On the morning of

July 23, 2021, the defendant called the plaintiff to discuss work issues; the plaintiff

explained during the call that she would not be able to work that day for the same reasons

as July 22, 2021.   The defendant did not object to the requested absence.   The defendant

then sent a text message to the plaintiff later on July 23, 2021, asking her "[c]ould you

possibly swing by and sign some documents we need to turn in to the bank next week?"
The plaintiff responded by text message on July 23, 2021, and asked whether "[i]t was
something I can sign through email?"  The defendant responded by saying that it could
not be done by email and to "[not] worry about it."

13.     The plaintiff was absent from work between July 26 and July 30, 2021, due to a
pre-planned, pre-authorized vacation.   On Monday, August 2, 2021, the plaintiff called
her supervisor and left a voice message, explaining that because of her emotional trauma
caused by the robbery, she would not be at work that day. The defendant did not object to
the requested absence.   On August 3, 2021, the plaintiff sent a text message to her
supervisor, saying "I'm not ready to come back yet. I received a call from Melissa
Human Resources) yesterday and tried calling her back twice with no response.  I will try
her again this morning but I still wanted to let you know."   The plaintiff then called
Melissa and left a voice message for her.   The plaintiff then participated in a phone
consultation with her healthcare provider via the defendant's workers' compensation
carrier, which was ongoing treatment for her emotional trauma caused by the robbery.

14.     Despite the objective facts showing that the she was criminally victimized while
working and unable to work a regular schedule because of her respective serious medical
conditions, the plaintiff was suddenly discharged from her employment by the defendant
by telephone in the afternoon of August 3, 2021, because of an alleged "no call, no show"

on July 23, 2021.  The alleged basis for the discharge is pre-textual, false.  Indeed, the plaintiff's phone records show—conclusively—regular contact with her immediate supervisor throughout all of her absences over the previous 4 weeks since the robbery and specifically on July 22, July 23, and thereafter, both by phone call and text message.

**CAUSES OF ACTION**

**Count 1—FMLA Retaliation**

15.    The plaintiff incorporates within Count 1 all of the allegations set forth in paragraphs 1-14, *supra*.

16.    The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. 29 U.S.C. § 2601(b)(1) and (2).  The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998).  The statute prescriptively provides a series of substantive rights.  *See id.*  The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position

of such employee." 29 U.S.C. § 2612(a)(1)(D); *see Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).   When an eligible employee returns from leave taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1); *see Nero*, 167 F.3d at 925.4   The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights. 29 U.S.C. § 2615(a)(1)-(2); *see Chaffin*, 179 F.3d at 319.

17.   Here, the defendant is subject to the provisions of the FMLA.   The plaintiff is eligible for the statutory job protection afforded by the FMLA.   Under the FMLA's general provisions, the plaintiff was on a leave of absence for serious medical conditions in June and July 2021, at a minimum on an intermittent basis because of her mental stress caused by the robbery, her symptoms consistent with COVID-19, and her young children's symptoms that were consistent with COID-19.   These were serious medical conditions that resulted in the plaintiff being unable to perform the essential functions of her job with the defendant.

18.   However, while the plaintiff was still reaching treatment for her serious medical condition(s), the plaintiff was discharged from her employment by the defendant because of her absence periods.

19.   The defendant's conduct caused damages to the plaintiff.   She therefore seeks

reinstatement, to recover her past and future economic and non-economic damages from the defendant, her damages for mental anguish, and all other damages provided by law. Because of the nature of the conduct; that is, being willful and intentional, the plaintiff also seeks to recover liquidated damages and/or exemplary damages from the defendant, as provided by law.  The plaintiff also seeks her costs and attorney's fees, as provided by law.

### Count 2—Discharge in Retaliation for filing a Workers' Compensation Claim

20.     The plaintiff incorporates within Count 2 all of the factual allegations set forth in paragraphs 1-19, *supra*.

21.     Pursuant to section 451.001 of the Texas Labor Code, employers may not discharge or in any other manner discriminate against an employee because the employee filed a workers' compensation claim in good faith and/or because an employee sustained a work-related injury at work.  TEX. LABOR CODE § 451.001.  In this case, in discharging the plaintiff from her employment, the defendant violated section 451.001 of the Texas Labor Code.

22.     The defendant knew that the plaintiff had either been injured and required treatment and/or instituted a workers' compensation claim and suffered an on-the-job injury.   Further, after being place on such notice, the defendant expressed a negative attitude toward the plaintiff's injury and/or injured condition by failing to cooperate with

her by initially dissuading her from filing a claim, questioning her need for benefits, and expecting her to return to work while she continued to receive treatment for her condition(s).

23.     By this suit, the plaintiff seeks reinstatement and monetary damages from the defendant for her past and future lost wages, mental anguish, other damages, costs, and attorney's fees.

24.     Further, because the conduct of the defendant that resulted in the discharge was committed by the defendant intentionally and with malice and/or reckless indifference, the defendant seeks an award of punitive damages against the defendant in an amount to be determined by the trier of fact based on the evidence presented.

### **PRAYER**

25.     For these reasons, Plaintiff Rainee Alaniz respectfully requests that Defendant Gulf Coast Federal Credit Union be cited to appear herein and answer, and that upon trial of this matter, have judgment against Defendant for Plaintiff's reinstatement, damages, economic damages, non-economic damages, liquidated damages, mental anguish damages, exemplary damages, attorney's fees, costs, pre-judgment interest, post-judgment interest, and for such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

9

s/Jon D. Brooks
Jon D. Brooks
Attorney-in-Charge
Federal ID 24936
State Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710
361.885.7716 (facsimile)
jbrooks@brooksllp.com

**Attorneys for Plaintiff Rainee Alaniz**